F I L E D
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
11/7/2023
JEFFREY P. ALLSTEADT, CLERK

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BLACKROCK BURR RIDGE, INC., | ) | Bankruptcy No. 17-33456 |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| MICHAEL K. DESMOND, not individually, but Solely as Chapter 7 Trustee for the Estate of BLACKROCK BURR RIDGE, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Adversary No. 19-00686 |
| v. | ) ) | |
| Norah Sheehan and Joseph Sheehan, | ) ) | |
| Defendant. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE**

NORAH SHEEHAN and JOSEPH SHEEHAN, acting individually as Pro Se Defendants, (the "Defendants") respond as follows to Trustee's Motion in Limine Regarding the Sheehans' Dispute with Sterling Bay ("Plaintiff's Motion in Limine").

1. **PLAINTIFF'S TIMING OF OBJECTIONS**

Plaintiff failed to object to Defendants' exhibits and witnesses before the deadline established by the Final Pretrial Order (the "pretrial order"), dated August 9, 2023, a copy of which is attached hereto as **Exhibit 1**. As per page 2 of the pretrial order, "Any party opposed to

1

the admission of a proffered exhibit shall serve, no less than **(5)** day(s) before the Submission Date, objections to exhibits…" **Ex. 1**, ¶ 8. Furthermore, also on page 2 of the pretrial order, it states, "Any party opposed to the admission of testimony set forth on a witness list shall serve, no less than (5) day(s) before the Submission Date, objections specifying grounds and authority therefore." **Ex. 1**, ¶ 10. The Submission Date was October 24, 2023, making the effective deadline to serve objections to both Defendants' exhibits and witnesses October 19, 2023. Plaintiff, however, did not serve his objections on the Defendants until October 20, 2023, after the deadline had passed. In response to Plaintiff's late objections, Norah, Co-Defendant, sent two emails to Plaintiff's attorney on October 21, 2023, one regarding Plaintiff's objections to certain witnesses and one regarding Plaintiff's objections to certain exhibits, copies of which are attached hereto as **Exhibit 2**. In her emails, Norah informed Plaintiff's attorney that Plaintiff's objections were served after the effective deadline, and therefore she intended to use at trial the exhibits and witnesses contained on her lists **Ex. 2**. Plaintiff's attorney responded with an email to both Co-Defendants on October 22, 2023, where he conceded that Plaintiff's objections were late, but also stated that he would "file a motion for leave to obtain an additional day." A copy of Plaintiff's attorney's email to Norah is attached hereto as **Exhibit 3**. However, that motion for leave to obtain an extension was never filed, and hence was never granted to Plaintiff.

Based on Plaintiff's attorney's assurance to Defendants that a motion to extend the deadline would be forthcoming, Defendants operated under the reasonable expectation that a motion would be filed in the near future, and hence, they waited until that filing occurred before considering their next steps. However, as noted, the motion was never filed. This anticipation informed and shaped the Defendants strategic preparations and timeline, effectively placing the Defendants in a holding pattern pending the Plaintiff's action. Defendants' reliance on the

Plaintiff's stated intentions was made in good faith, and Plaintiff's failure to follow through has impaired Defendants' procedural rights and strategic planning.

Under Federal Rule of Civil Procedure 16(f), a failure to comply with a scheduling or pretrial order can result in sanctions, including dismissal of an action or proceeding. The timely filing of pretrial motions is critical to the orderly preparation for trial and the avoidance of surprise. Plaintiff's failure to adhere to the pretrial schedule set by the Court has potentially prejudiced Defendants' ability to prepare for trial and has disrupted the Court's management of its docket. Plaintiff is represented by legal counsel, who undoubtedly is aware of the imperative to comply with the Court's scheduling orders and the potential ramifications of failing to do so. In contrast, Defendants are proceeding pro se and, while held to the same standards as a licensed practitioner, does not possess the formal training and experience of a practicing attorney.

Plaintiff's attorney's failure to submit a timely motion to extend the deadline for objecting to Defendants' submitted exhibits and witnesses, as professionally intimated, while dealing with pro se Defendants, can be seen as a strategic maneuvre designed to exploit the procedural inexperience of the opposing party. This conduct, which may be construed as a form of legal gamesmanship, undermines the equitable administration of justice. By allowing Defendants to believe that an extension was imminent, Plaintiff's attorney not only breached procedural compliance but may also have engaged in a subtle form of manipulation, gaining an unfair advantage over pro se Defendants who relied on his indications in good faith. Such actions, whether intentional or a result of negligent oversight, disrupt the balance of fairness in litigation and contravene the principles of professional responsibility and fairness the legal system is predicated upon.

## 2. FALSE, MISLEADING AND PRESUMPTIVE STATEMENTS MADE IN PLAINTIFF'S MOTION IN LIMINE

On page 1 of Plaintiff's Motion in Limine, when discussing Norah and Joseph Sheehan's relationship with Blackrock Burr Ridge, Inc. (the "Debtor"), the Debtor is referred to as "their company". This is a false claim, perhaps to create the illusion that Joseph was an owner/shareholder of the Debtor. Joseph Sheehan ("Joseph") was never an owner, manager, director, officer, insider, or paid associate of the Debtor. Additionally, Joseph never had any official position or financial interest in the Debtor company. The Debtor was owned only by Norah Sheehan and <u>Bernard</u> Sheehan, who were each 50% shareholders. Bernard is currently a defendant in a separate adversary case brought by the Plaintiff.

On page 4 of Plaintiff's Motion in Limine, it states, "Defendants Norah Sheehan and Joseph Sheehan, along with Bernard Sheehan, filed the captioned chapter 7 case for the Debtor on November 8, 2017." This is also a false claim, perhaps again to create the illusion that Joseph possessed some kind of insider status in the Debtor. Bernard Sheehan, president of the Debtor, filed the chapter 7 case.

Also on page 4 of Plaintiff's Motion in Limine, it states, "Defendants stripped the Debtor of all property." This claim is false. Furthermore, it states, "Defendants transferred approximately $1,355,060.35 to themselves on February 9, 2016 (the "Fraudulent Conveyance"). At the time they did so, they were aware that Sterling Bay was seeking its fees." Firstly, no funds were transferred to Joseph. Secondly, any funds transferred to Norah were a shareholder loan repayment, not a distribution. If the funds transferred to Norah were a distribution, then presumably the other 50% shareholder in the Debtor, Bernard Sheehan, would have also been transferred an equal amount. Instead, Bernard did not receive any funds Plaintiff alleges is a

distribution and a fraudulent transfer. Thirdly, the allegation that "Sterling Bay was seeking its fees" on or around February 9, 2016, is unfounded. The judgment in favor of the Sterling Bay entities in state circuit court, a copy of which is attached hereto as **Exhibit 4**, did not occur until September 6, 2016, 7 months <u>after</u> the Debtor transferred funds to Norah in the form of shareholder loan repayment. Therefore, at the time of the transfer, there was no indication, let alone a judgement, that the Debtor would owe fees to Sterling Bay Companies, LLC ("Sterling Bay"). Furthemore, Sterling Bay did not even file a petition for attorney's fees until October 5, 2016, 8 months <u>after</u> the Debtor transferred funds to Norah. A copy of said petition for attorney's fees is attached hereto as **Exhibit 5**. Finally, when the state court granted the Debtor's motion for immediate release of $1,447,900.90 held in escrow by the Clerk of Circuit Court on January 21, 2016, the Court ordered that the "funds shall be made payable to Blackrock Burr Ridge, Inc., [and] Attorneys, Kreamer Law Group, LLC". Nowhere in the Order were there restrictions stating how those funds could be used. More specifically, there was no requirement in the Order that funds would need to be set aside for Sterling Bay or any of the other co-defendants in the state court proceedings, which were ongoing at the time and would not result in a trial until 7 months later. A copy of the Order is attached hereto as **Exhibit 6**.

On page 9 of Plaintiff's Motion in Limine, it refers to Sterling Bay as "the Debtor's main creditor…" Labeling Sterling Bay as the "main creditor" is misleading because it suggests that there is more than one creditor. As mentioned in several of Defendants' submissions, Sterling Bay is the only official creditor of the Debtor; Sterling Bay is the only creditor that executed and submitted an Official Form 410 (Proof of Claim), and hence Sterling Bay is the only claimant and the only official creditor of the Debtor. A copy of the Official Form 410 (Proof of Claim), executed by Sterling Bay's attorney and on behalf of Sterling Bay on October 17 2018, is

attached hereto as **Exhibit 7**. Furthermore, in a deposition of the Plaintiff conducted on October 27, 2023, Plaintiff stated that he did not recall ever seeing an Official Form 410 (Proof of Claim) for Norah Sheehan, and to-date, Plaintiff has not produced a copy of one.

### 3. THE EXHIBITS AND WITNESSES PROFFERED BY THE DEFENDANTS

The exhibits and witnesses proffered by the Defendants, the lists of which were filed on October 13, 2023, with hardcopies of the exhibits delivered to the office of Plaintiff's attorney the same day, are pertinent to the case at bar. Despite Plaintiff's assertions in his Motion in Limine, the exhibits and witnesses proffered by the Defendants are **not** part of an attempt to "relitigate" the Blackrock Burr Ridge, Inc v. Sterling Bay Companies, LLC, et al. case (case no. 2011 L 9199) ("Blackrock v. Sterling Bay"). The purpose of many of the exhibits and witnesses Plaintiff claims are to be used to "relitigate" the state circuit court case are proffered to present the financial transfers between Norah Sheehan, the Debtor and third parties, including attorneys and experts, during the period before and after Norah received her shareholder loan repayment in February, 2016. It just so happens that this period coincides with the state court case, Blackrock v. Sterling Bay, and many of the transfers that occurred during this period involved the cost of litigating that case. For example, even **after** Norah received a shareholder loan repayment in February 2016, she continued to loan the Debtor hundreds of thousands of dollars so that the Debtor could fund the Blackrock v. Sterling Bay litigation, including payments to lawyers and experts. This is important because it illustrates that **if** Norah is liable for committing a fraudulent transfer, which Plaintiff alleges and Defendants deny, then she is liable for far less than the amount Plaintiff alleges she is liable for in the amount of hundreds of thousands of dollars. Furthermore, it illustrates that Norah did not believe that the Debtor would go into bankruptcy, as it would be unconscionable to continue loaning a company funds one thought would go into

bankrupcty, effectively assuring that those loans would not be repaid to the lendor, in this case Norah. These transfers are evidenced by communications (including emails), affidavits, deposition transcripts, and other documents involving individuals who were involved in the Blackrock v. Sterling Bay case. But, again, the purpose of these exhibits are not to relitigate the Blackrock v. Sterling Bay case. Similarly, the purpose of some of Defendants' proffered witnesses, such as the Debtor's past attorneys, Aaron Rifkind and Sean Patrick, and the Debtor's past expert, Jeffrey Rothbart, is not to relitigate the Blackrock v. Sterling Bay case, but rather to testify regarding the transfer of funds between Norah Sheehan, the Debtor and third parties. On page 8 of Plaintiff's Motion in Limine, it states "None of these witnesses or exhibits have any relevant information about the ultimate fact to be decided in this case…All of them concern only the Sheehans' dispute with Sterling Bay." That statement is false for the reasons outlined above.

Plaintiff should be cautious not to accuse the Defendants of relitigating the Blackrock v. Sterling Bay case considering that he has proffered witnesses and exhibits that effectively reopens the Blackrock v. Sterling Bay litigation. For example, on page 2 of *Plaintiff's Amended List of Witnesses and Exhibits*, filed with the Court on July 26, 2023, and attached hereto as **Exhibit 8**, it states, "Plaintiff will call Daniel Tarpey to testify regarding…(b) the litigation between Sterling Bay and the Debtor". Daniel Tarpey was Sterling Bay's lead attorney during the Blackrock v. Sterling Bay case, and Plaintiff "will call" him to testify to, amongst other things, the litigation between Sterling Bay and Blackrock Burr Ridge, Inc., the Debtor. Also on page 2, it states "Plaintiff may call Mr. Kreamer to testify regarding the underlying claims between Blackrock and Sterling Bay, the status of that litigation at the time the Debtor transferred funds to the Sheehans…" **Ex. 8**, p.2. Mr. John Kreamer was the attorney for Blackrock Burr Ridge, Inc. for the majority of the duration of the Blackrock v. Sterling Bay case,

and according to the Plaintiff's witness list, he may call Mr. Kreamer to testify as to the "status of that litigation" in February 2016, 7 months before that case went to trial. Again, on page 3, it states "Plaintiff may call Bernard Sheehan to testify regarding…litigation between the Debtor and Sterling Bay, the use of proceeds from the sale of the property and the alleged claim of the Defendant Norah Sheehan." **Ex. 8**, p.3.

Furthermore, Plaintiff proffers numberous exhibits that were direct subjects of the Blackrock v. Sterling Bay case, or involved in that case, including the following exhibits: "Harris Bank Statements from 2012", "Daniel Tarpey Affidavit and Exhibits", "Closing Statement for 2009 Loan", "Correspondence from John Kreamer to Sheehans of January 23, 2016", "Sterling Bay's Reply Brief ISO Summary Judgement dated December 10, 2015", "June 2, 2014, Email from Bernard Sheehan to JC Kreamer", "Email between Kreamer and Sheehan dated 2012", "Email from Andy Gloor [CEO of Sterling Bay] to Bernard Sheehan dated November 12, 2009", "Emails from Kreamer to Sheehan and Tarpey from June 2011", "Group Exhibits of Documents produced in State Court litigation – Bates SB 04260 through SB05567", "Emails from James Sheehan to Kreamer re settlement in March of 2012", "Excel Workback re purchase Costs for Medical Building", "Harris Checking Account for BRMC", "Letter from Kreamer to Sheehans dated October 26, 2011", "Letter from Kreamer to Sheehans dated January 4, 2012", "Project Costs through end of 2009", "Report of Proceedings dated November 20, 2015", "Spreadsheet showing Sheehan Loan Transactions", "Spreadsheet showing Sources and used of cash". All of these exhibits are listed between p.4-7, inclusive, of *Plaintiff's Amended List of Witnesses and Exhibits*. **Ex. 8**, p.4-7.

Neither Co-Defendant, Norah Sheehan or Joseph Sheehan, objected to any of Plaintiff's aforementioned proffered exhibits, nor did they object to any of Plaintiff's proffered witnesses.

8

Conversely, Plaintiff objected to 52 out of 54 of Defendants' proffered exhibits and 7 out of 13 of Defendants' proffered witnesses. One might initially suppose that such objections are for good cause until one examines it closely and realizes that many, if not most, of these objections are merely to **obstruct Defendants from presenting evidence at trial**. For example, exhibit 18 and 19 of Plaintiff's proffered list of exhibits are "DEPOSITION OF JOSEPH SHEEHAN, Thursday, September 27, 2018" and "DEPOSITION OF NORAH SHEEHAN, Thursday, September 20, 2018", respectively. **Ex. 8**, p.5. One would think that if Plaintiff had these two deposition transcripts as exhibits in his exhibit list, then surely he would not object to Defendants having the exact same two deposition transcripts as exhibits in their exhibit list. Unfortunately, that is not the case. Exhibits 7 and 8 of Defendants' proffered list of exhibits are "Transcript of Deposition of Norah Sheehan (9/20/18)" and "Transcript of Deposition of Joseph Sheehan (9/27/18)", respectively. To both these exhibits, which again Plaintiff included as exhibits in his exhibit list, Plainted objected to their admission at trial on the grounds of "Hearsay". These two objections are found on page 2 of *Trustee's Objections to the Sheehans' Exhibits*, dated October 20, 2023, which is attached hereto as **Exhibit 9**. Similar to that example, there are multiple examples in the *Trustee's Objections to the Sheehans' Exhibits* where he objects to exhibits that are similar to exhibits that he himself has included as exhibits in his exhibit list, including emails with Sterling Bay insiders (e.g., Andy Gloor, CEO of Sterling Bay), excel spreadsheets of financial data related to Sterling Bay and Blackrock Burr Ridge's former partnership (e.g., costs associated with the Burr Ridge Medical Center building), etc.

In Plaintiff's Motion in Limine, Plaintiff requests that the Court "enter an order prohibiting the Sheehans from presenting argument or evidence about the dispute between the Debtor and Sterling Bay…" However, based on Plaintiff's witness list and exhibit list, both of

9

which include copious amounts of material related to the dispute between the Debtor and Sterling Bay, coupled with Plaintiff's high number of objections to Defendants' witness list and exhibit list, including exhibits that Plaintiff himself included in his exhibit list, one must conclude that Plaintiff's goal in filing this Motion in Limine is to create a scenario where his counsel can present arguments and evidence related to Sterling Bay, while Defendant is effectively gagged from even mentioning Sterling Bay. Such a scenario would create a biased, single-perspective, uncontested, narrative surrounding the Debtor and Sterling Bay that can only benefit the Plaintiff and only punish the Defendants. Therefore, such a motion must not be granted as it severely disadvantages the Defendants in favor of the Plaintiff.

**WHEREFORE**, Defendants, NORAH SHEEHAN and JOSEPH SHEEHAN, respectfully request that the Court deny Plaintiff's Motion in Limine.

Dated: November 7, 2023

Respectfully submitted,

*Norah E. Sheehan*

Norah E. Sheehan

Pro Se Co-Defendant

norahsheehan1972@gmail.com

AND

*Joseph C. M. Sheehan*

Joseph C. Sheehan

Pro Se Co-Defendant

joecmsheehan@gmail.com

## CERTIFICATE OF SERVICE

I, Norah E. Sheehan, Pro Se Defendant, hereby certify that on November 7, 2023, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing *Defendants' Response to Plaintiff's Motion in Limine* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the Service List below, and upon William J. Factor, attorney for Michael K. Desmond (not individually, but solely as Chapter 7 Trustee for Blackrock Burr Ridge, Inc.), through email.

Norah E. Sheehan

AND

Joseph C. Sheehan

### SERVICE LIST

**Registrants in the Case**
(Service via ECF and email)

| | |
|---|---|
| William J. Factor | wfactor@wfactorlaw.com; wfactorlaw@gmail.com |
| Justin R. Storer | jstorer@wfactorlaw.com |
| Jeffrey K. Paulsen | jpaulsen@wfactorlaw.com |
| Samuel Rodgers | srodgers@wfactorlaw.com |
| Joseph C. Sheehan | joecmsheehan@gmail.com |
| Norah E. Sheehan | norahsheehan1972@gmail.com |